Bradley A. Cosman (AZ 026223)
Thomas D. Ryerson (AZ 028073)
Zachary Stump (AZ 039670)
**PERKINS COIE LLP**
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
+1.602.351.8000
TRyerson@perkinscoie.com
BCosman@perkinscoie.com
ZStump@perkinscoie.com

*Counsel for Liquidation Trust*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:<br>LEGACY CARES, INC.,<br><br>　　　　　　　　Debtor<br>_____<br><br>LEGACY CARES LIQUIDATION TRUST,<br><br>　　　　　　　　Plaintiff.<br><br>v.<br><br>MATT WALTZ, and JS WALTZ CONSTRUCTION LLC,<br><br>　　　　　　　　Defendants | Chapter 11<br><br>Case No. 2:23-bk-02832-DPC<br><br>Adv. Pro. No.<br><br>**COMPLAINT** |

1

For its Complaint against Matt Waltz and JS Waltz Construction LLC, (collectively, "**Defendants**"), Jeremiah Foster of Resolute Commercial Services, as Liquidation Trustee for the Legacy Cares Liquidation Trust (the "**Trust**"), states and alleges as follows:

## INTRODUCTION

This adversary proceeding arises from Legacy Cares, Inc.'s (the "**Debtor**") distribution of millions of dollars to the Defendants through transactions ostensibly made under an agreement to settle legal disputes (the "**Payments**"). The Debtor made the Payments to the Defendants while insolvent, unable to pay its debts as they became due, and facing mounting losses and liabilities. The Payments are therefore avoidable and recoverable from the Defendants as actual and/or constructive fraudulent transfers under 11 U.S.C. §§ 548, 550 and Arizona's Uniform Fraudulent Transfer Act (A.R.S. §§ 44-1001 et seq.).

## PARTIES, JURISDICTION, AND VENUE

1. The Debtor began as an entity called Legacy Cares, LLC, formed in June 2018 by Randy Miller. On January 14, 2020, the Debtor was converted from an LLC to a non-profit entity under Arizona law and renamed Legacy Cares, Inc. Randy Miller and one of his sons, Chad Miller, were the original Directors of the Debtor. The Debtor was incorporated by J. Michael Baggett. The Debtor intended to build, operate, and manage Legacy Sports Park.

2. On May 1, 2023, approximately one year after Legacy Sports Park opened, the Debtor filed its petition for chapter 11 bankruptcy. [Doc 1].

3. On June 21, 2024, this Court entered its *Order Confirming Amended Plan of Liquidation* [Doc 800].

2

Case 2:23-ap-00103-DPC Doc 161 Filed 02/06/25 Entered 02/06/25 10:45:36 Desc
Exhibit Main Redacted Complaint Page 2 of 13 3 of 14

4. Under Article 8 of the Amended Plan, the Trust was established for the benefit of Bondholders and Allowed General Unsecured Creditors. Resolute Commercial Services, LLC, by and through Jeremiah Foster, was appointed to serve as Trustee. [Doc 762]

5. Under Article 8.5 of the Amended Plan, the Trustee is vested with the power to "investigat[e] and prosecut[e] any Avoidance Actions and Causes of Action as a bankruptcy trustee," including those under 11 U.S.C. §§ 547, 548, 550 and A.R.S. §§ 44-1004, 44-1007.

6. Upon information and belief, Defendant Matt Waltz resides in Maricopa County, Arizona. Matt Waltz was, at times relevant to this matter, a member of JS Waltz Construction LLC.

7. Upon information and belief, JS Waltz Construction LLC is a limited liability company formed in Maricopa County, Arizona. JS Waltz Construction LLC, at times relevant to this matter, was authorized to do business in Arizona and had its principal place of business in Maricopa County, Arizona.

8. This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

9. This is a core proceeding under 28 U.S.C. § 157(b).

10. Venue is appropriate under 28 U.S.C. §§ 1408, 1409.

11. The statutory predicates for the relief requested are 11 U.S.C. §§ 544, 548, 550 and A.R.S. §§ 44-1004, 44-1007.

3

Case 2:25-ap-00103-DPC   Doc 1   Filed 02/04/25   Entered 02/04/25 10:45:50   Desc
Exhibit Main Redacted Complaint   Page 3 of 13   Page 4 of 14

# GENERAL ALLEGATIONS

I. **The Debtor is formed to construct and operate Legacy Sports Park, a sports complex located in Mesa, Arizona.**

12. In August 2020, the Debtor sought financing to acquire, construct, and operate Legacy Sports Park (the "**Project**"), a 300-acre sports and entertainment complex in Mesa, Arizona.

13. On August 11, 2020, the Debtor obtained financing for the Project through the issuance of tax-exempt bonds by the Arizona Industrial Development Authority ("**AZIDA**"). The borrowing was memorialized in a Loan Agreement between AZIDA and the Debtor. Representations regarding the project were presented to prospective bond purchasers in a Limited Offering Memorandum dated August 11, 2020 (hereinafter the "**Offering Memo**").

14. The initial bond issuance in August 2020 raised more than $250 million in loan funds that were loaned by AZIDA to the Debtor for the Project. The loan funds were to be advanced to the Debtor pursuant to the terms of the Loan Agreement with AZIDA. A supplemental bond offering raised an additional $33 million in loan funds in June 2021. The Debtor thus had access to more than $280 million in bond funds to be used for its organizational purpose of constructing and operating the Project.

15. Construction on the Project purportedly began at least by September 2020. The Project was completed by and officially opened in January 2022.

16. The Offering Memo disclosed that the manager of the Project would be Legacy Sports USA, LLC ("**Legacy Sports**"). Legacy Sports is owned by Randy Miller, Chad Miller, and Michael Baggett, i.e., the original Directors and incorporator of the Debtor, respectively.

4

17. After ultimately terminating its agreement with Legacy Sports, the Debtor entered into a new management agreement with Elite Sports Group, LLC ("**Elite**").

18. The Project faced significant delays in construction that cost the Project millions of dollars over their anticipated budget. Upon information and belief, the additional construction costs impacted the debt profile of the construction project and the Debtor's ability to earn sufficient revenue to service the debt, as funds necessary for operations were instead used for the construction costs.

19. Additionally, the Offering Memo projected the Project would generate nearly $100 million in revenue during its first year in operation. Upon opening in January 2022, however, the Project generated less than $30 million per year and operated at a nearly $15 million loss.

20. Ultimately, on May 1, 2023, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, Title 11 of the United States Code. The Debtor's bankruptcy petition identified over $300 million owed to bondholders.

21. Additionally, at the time of its petition, more than $33 million of mechanic liens had been filed by contractors who worked on the construction of the Project and who were not paid. The Debtor also owed over $13.4 million to general unsecured creditors representing debts arising from unpaid equipment leases and construction and trade payables.

5

Case 2:23-ap-00113-DPC Doc 161 Filed 02/26/25 Entered 02/26/25 10:45:36 Desc
Exhibit Main Redacted Complaint Page 5 Page 6 of 14

## II. Legacy Sports enters various financing, equity, and service agreements with Matt Waltz and JS Waltz Construction LLC related to the Project.

22. As stated above, the Debtor's Offering Memo disclosed that the manager of the Project would be Legacy Sports, a company owned by Randy Miller, Chad Miller, and Michael Baggett.

23. Beginning in early 2019, the Debtor and Legacy Sports entered several agreements with Matt Waltz ("**Waltz**") and JS Waltz Construction LLC ("**JS Waltz**"). These agreements included:

   a. A Service Agreement dated July 16, 2019, between JS Waltz and Legacy Sports.

   b. An Equity Agreement dated January 13, 2020, between JS Waltz and Legacy Sports. Through this agreement JS Waltz purchased a $1 million equity stake in Legacy Sports.

   c. A Development Agreement dated April 14, 2020, between JS Waltz and Legacy Sports.

24. The Debtor, Legacy Sports, Waltz and JS Waltz entered into a series of other agreements.

## III. While insolvent, the Debtor makes Payments █████████████████████████████████████

25. On October 20, 2020, the Debtor wrote to JS Waltz providing notice that the Debtor had terminated the agreement for the Debtor's convenience effective immediately.

26. Following the Debtor's termination for convenience, Waltz and JS Waltz asserted various claims against both the Debtor and Legacy Sports, and the Debtor and Legacy Sports asserted various claims against Waltz and JS Waltz. These claims were related to the Project, the equity

6

Case 2:23-ap-00103-DPC    Doc 161    Filed 02/26/25    Entered 02/26/25 10:45:50    Desc
Exhibit Main Redacted Complaint    Page 7 of 13

investments by Waltz and JS Waltz, and the various agreements between the parties (the "**Dispute**").

27. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

28. The Debtor and Legacy Sports are separate entities, with Legacy Sports providing management services to the Debtor. ████████████████████████████████████████████████████████████████████████████████████████

29. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ But, as discussed below, all payments were made by the Debtor, regardless of whether they were to resolve claims against the Debtor or claims against Legacy Sports.

30. ████████████████████████████████████████████████████████████████████████████████████████████████████████

31. As set forth above, upon information and belief, the Equity Agreement was between JS Waltz and Legacy Sports. Hence, JS Waltz received a $1 million equity stake in Legacy Sports, and not the Debtor.

32. Accordingly, the Equity Return Payment should have been paid by Legacy Sports to JS Waltz. But, upon information and belief, the Debtor paid the Equity Return Payment to JS Waltz.

7

Case 2:24-bk-09680-DPC Doc 161 Filed 02/04/25 Entered 02/04/25 10:45:30 Desc
Exhibit Main Redacted Document Complaint Page 7 Page 8 of 14

1  33.  The Debtor therefore made the Equity Return Payment while
2  insolvent, outside the ordinary course of business, and without receiving
3  reasonably equivalent value in return.
4  34.  ██████████████████████████████████████
5  ████████████████████████████████████████████
6  ██████████████████████████
7  35.  ██████████████████████████████████████
8  ████████████████████████████████████████████
9  ████████████████████████████████████████████
10 ██████████████
11 36.  ██████████████████████████████████████
12 ████████████████████████████████████████████
13 ██████████████████████████
14 37.  Because the Debtor was not liable for any of the legal claims
15 between JS Waltz and Legacy Sports, to the extent the Debtor transferred
16 assets as part of the Legal Claims Payment to settle legal claims against
17 Legacy Sports, the Debtor made those transfers while insolvent, outside the
18 ordinary course of business and without receiving reasonably equivalent
19 value in exchange.
20 38.  ██████████████████████████████████████
21 ████████████████████████████████████████████
22 ████████████████████████████████████████████
23 ████████
24 39.  Upon information and belief, on June 2, 2021, the Debtor paid
25 ████████████████████████████████████████████
26 ██████████████████████████

8

40. At the time of the Payments, the Debtor was insolvent, as it was unable to pay its debts owed to the bondholders, unpaid contractors, and general unsecured creditors.

41. In light of the Debtor's mounting losses, debts, and liabilities, the Debtor made (1) the Equity Return Payment on behalf of Legacy Sports and (2) at least part of the Legal Claims Payment on behalf of Legacy Sports to hinder creditors' ability to recoup their debts from the Debtor.

42. As set forth above, ultimately the Debtor filed its chapter 11 petition on May 1, 2023 (the "**Petition Date**"). Thus, the Debtor made the Payments less than two years before the Petition Date.

**FIRST CLAIM FOR RELIEF**

**(Actual Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(A), 550)**

43. The Trust repeats and realleges the allegations set forth above.

44. [REDACTED]

45. The Debtor made the Payments to the Defendants with an actual intent to hinder, delay, or defraud the Debtor's creditors.

46. Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, the Trust is entitled to a judgment: (a) avoiding the Payments, (b) directing that the Payments be set aside, (c) requiring the Defendants, as the recipients of the Payments and/or the persons for whose benefit the Payments were made, to return such Payments, or the value thereof, to the Trust with interest, and (d) recovering attorneys' fees from the Defendants.

## SECOND CLAIM FOR RELIEF

**(Constructive Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(B), 550)**

47. The Trust repeats and realleges the allegations set forth above.

48. ███████████████████████████████████████████████████████████████████████████████████████████████████████

49. As set forth above, the Debtor did not receive reasonably equivalent value in exchange from the Defendants in exchange for the Payments.

50. As set forth above, the Debtor made the Payments to the Defendants even though it was insolvent, its debts were greater than its assets at the time of the Payments, and it intended to incur debts beyond its ability to pay.

51. As set forth above, the Debtor knew or should have known that making the Payments to the Defendants would make it impossible to service its debts.

52. Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, the Trust is entitled to a judgment: (a) avoiding the Payments, (b) directing that the Payments be set aside, (c) requiring the Defendants, as the recipients of the Payments and/or the persons for whose benefit the Payments were made, to return such Payments, or the value thereof, to the Trust with interest, and (d) recovering attorneys' fees from the Defendants.

## THIRD CLAIM FOR RELIEF

**(Actual Fraudulent Transfer – A.R.S. §§ 44-1004(A)(1), 44-1007)**

53. The Trust repeats and realleges the allegations set forth above.

10

Case 2:25-ap-00103-DPC Doc 1-1 Filed 02/26/25 Entered 02/26/25 10:45:30 Desc
Exhibit Main Redacted Complaint Page 10 of 13 1 of 14

54. As set forth above, the Debtor made the Payments to the Defendants with actual intent to hinder, delay, or defraud the Debtor's creditors.

55. The Debtor knew or should have known that making the Payments to the Defendants would make it impossible to service its debts.

56. Pursuant to A.R.S. §§ 44-1004(A)(1) and 44-1007, the Trust is entitled to a judgment: (a) avoiding the Payments, (b) requiring the Defendants, as the transferees of the Payments, to return such Payments, or the value thereof, to the Trust with interest, and (d) recovering attorneys' fees from the Defendants.

**FOURTH CLAIM FOR RELIEF**

**(Constructive Fraudulent Transfer – A.R.S. §§ 44-1004(A)(2), 44-1007)**

57. The Trust repeats and realleges the allegations set forth above.

58. As set forth above, the Debtor did not receive reasonably equivalent value from the Defendants in exchange for the Payments.

59. As set forth above, the Debtor made the Payments to the Defendants despite that its assets were unreasonably small at the time of the Payments in comparison to the Payments.

60. As set forth above, the Debtor knew or should have known that making the Payments to the Defendants would make it impossible to service its debts.

61. Pursuant to A.R.S. §§ 44-1004(A)(2) and 44-1007, the Trust is entitled to a judgment: (a) avoiding the Payments, (b) requiring the Defendants, as the transferees of the Payments, to return such Payments,

11

or the value thereof, to the Trust with interest, and (d) recovering attorneys' fees from the Defendants.

WHEREFORE, the Trust respectfully requests the Court to enter judgment as follows:

A. Finding that the Payments made by the Debtor to the Defendants constitute fraudulent transfers and are therefore null and void under 11 U.S.C. § 548;

B. Directing the Defendants to return the Payments, or the value thereof, to the Trust under 11 U.S.C. § 550;

C. Disallowing any claims by Defendants pursuant to 11 U.S.C. § 502(d);

D. Finding that the Payments made by the Debtor to the Defendants constitute fraudulent transfers in violation of A.R.S. §§ 44-1001 et seq. and ordering that the Trust is entitled to any or all of the remedies available to creditors as set forth in A.R.S. § 44-1007;

E. Awarding the Trust pre- and post-judgment interest under any available statutes;

F. Awarding the Trust reasonable attorney's fees and costs incurred under any available statutes; and

G. For such and further relief as the Court finds proper and just.

12

Case 2:25-ap-00103-DPC Doc 1-1 Filed 02/04/25 Entered 02/04/25 10:45:30 Desc Exhibit Main Redacted Complaint Page 12 of 13

| February 28, 2025 | **PERKINS COIE LLP** |
|---|---|
| | By: */s/ Thomas D. Ryerson*<br>Bradley A. Cosman<br>Thomas D. Ryerson<br>Zachary Stump<br>2525 E. Camelback Road, Suite 500<br>Phoenix, Arizona 85016-4227 |
| | *Counsel for Liquidation Trust* |

13

Case 2:25-ap-00103-DPC Doc 161 Filed 03/28/25 Entered 03/28/25 10:45:36 Desc
Exhibit Main Document Complaint Page 13 of 14